The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence in this matter, with the exception of the evidence relating to average weekly wage. Having considered the evidence, the Full Commission affirms, with modifications, the Deputy Commissioners award of benefits and enters the following Opinion and Award:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and are subject to the terms of the Workers Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter.
2. The plaintiff, Samuel S. Davis, was an employee of the defendant, The Bowling Center, and Casualty Reciprocal Exchange is the workers compensation carrier of The Bowling Center.
3. The plaintiff alleges that he sustained an injury on June 22, 1998.
4. It is stipulated that plaintiff has not returned to work at The Bowling Center since August 11, 1998.
A Pre-Trial Agreement dated August 10, 1999 was submitted by the parties and is incorporated by reference. The documents attached to the Pre-Trial Agreement were stipulated into evidence.
***********
Based upon all of the evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 58 years old at the time of the hearing before the Deputy Commissioner and who is a high school graduate, began working for defendant-employer in approximately 1983 when The Bowling Center was bought by Dong Jin. He also worked for the previous owner. His job as head mechanic involved keeping the machinery in good condition, patching the lanes with epoxy and replacing boards on them if necessary, and making necessary adjustments to the pin decks. Since he had had a major back operation with a fusion of several levels, he usually obtained assistance with heavy lifting. There were two assistant mechanics employed by defendant-employer who also performed maintenance and repairs under plaintiffs direction.
2. Although plaintiff was able to return to work after his back surgery in 1989, he continued to experience episodes of back pain. He also had other health problems, including fibromyalgia. Consequently, it was not unusual for him to complain of pain to his co-workers.
3. Plaintiffs average weekly wage as of June 1998 was $423.60, which yields a compensation rate of $282.41.
4. Beginning June 1, 1998, new synthetic lanes were installed at the bowling alley. Since the new lanes were higher than the former ones, plaintiff had to raise the tables on the pin decks and then repeatedly adjust the pin decks as they were used by bowlers. Consequently, he had to work nineteen straight days and was more active than normal. On June 22, 1998 he had to make further adjustments to machine number fourteen. As he was tightening a nut on a bolt, he experienced severe pain in his low back and down his right leg. The pain was so severe that he had to sit in the machine for a minute and then had difficulty climbing out of it.
5. Since the injury occurred at the end of the workday, the manager, Kitty Powell, had left for the day. Consequently, it was the following day that plaintiff reported the injury to her. Although he described getting hurt while adjusting the pin deck the day before, Ms. Powell just assumed that this was another episode like previous ones which would resolve with time. She did not complete an accident report or tell him anything about getting medical treatment. Plaintiff continued to complain of serious pain over the next couple of weeks and expected her to instruct him regarding medical treatment. He also asked for a form to report the accident, but none was provided.
6. Since his employer took no steps to report the injury, plaintiff contacted the Industrial Commission and obtained a blank Form 18 which he completed and which his wife sent to the Commission. The Form 18 did not designate the name of the employer as it appeared on the insurance policy but rather named the bowling alley owner, Dong Jin, individually, so the Commission acknowledged receipt of the Form 18 by contacting Mr. Jin as a non-insured. Mr. Jin was furious with plaintiff and called him in for a meeting. Mr. Jin apparently misunderstood his responsibilities regarding workers compensation and suspended plaintiff from work for having filed the claim with the Commission. His testimony indicating that plaintiff was suspended for not following company procedure was not accepted as accurate.
7. Having not been provided with medical treatment, plaintiff finally went to his normal medical practice where he saw Dr. Sigmon. By August 18, 1998 when he saw the doctor, his condition had deteriorated to the point that he was having difficulty walking. His reflexes were diminished and he had a profound right foot drop, so Dr. Sigmon sent him to Dr. Hardy, a neurosurgeon who had previously treated him. Dr. Hardys physicians assistant examined him on August 20, 1998 and ordered a mylogram/CT scan which revealed spondylolesthesis at L1-2 with significant spinal stenosis. After reviewing the findings, Dr. Hardy referred plaintiff to Dr. Reeg, a spinal orthopedic surgeon, who examined him on September 4, 1998. His symptoms had continued to worsen and he was reporting falling episodes by that time. Dr. Reeg reviewed the mylogram/CT scan and concluded that there was a herniated disc at L1-2 in addition to the other findings. In view of the serious nature of plaintiffs condition, Dr. Reeg recommended surgery on an urgent basis, so plaintiff had surgery that evening to decompress the L1-2 interspace, to remove the hardware from his previous fusion and to explore the fused area of his lumbar spine.
8. Dr. Reeg advised plaintiff that the surgery performed that day was intended to address the acute problems and the herniated disc. However, the spine was not stable and further surgery would ultimately be necessary in order to stabilize the vertebrae. Plaintiff improved following the September 4, 1998 operation and reported increased strength in his legs. However, he continued to have significant dysfunction in his right leg with a foot drop. Dr. Reeg advised him to lose weight in anticipation of the next operation, so plaintiff began a weight loss program and was able to lose a significant amount of weight. His symptoms remained more stable than Dr. Reeg had anticipated due to his weight reduction, so surgery was delayed through the date of the doctors deposition on November 2, 1999.
9. On June 22, 1998 when plaintiff pulled to tighten the nut in machine number 14, he sustained a specific traumatic incident of the work assigned. As a result of the incident, he injured his back. The acute neurologic condition from the herniated disc and spinal stenosis, for which Dr. Reeg performed surgery, was a proximate result of the back injury on June 22, 1998. In addition, the incident was one of the proximate causes for the spinal instability which plaintiff continued to have as of the date of hearing before the Deputy Commissioner, although he clearly had preexisting problems which also contributed significantly to that condition. Further surgery was necessary in order to address that problem.
10. As a result of his injury on June 22, 1998, plaintiff was unable to work in any capacity from August 18, 1998 until May 21, 1999. He was only able to perform sedentary work after May 21, 1999 and defendant employer did not offer work to him which was suitable to his capacity. The duties of his regular job were too strenuous considering his residual symptoms. He remained within the healing period throughout the time in question, expecting that Dr. Reeg would schedule the operation to stabilize his spine once his symptoms became sufficiently severe.
11. Since plaintiff had not reached maximum medical improvement by the date Dr. Reeg was deposed, no finding is made regarding the extent of permanent disability he may sustain as a result of his June 22, 1998 injury at work.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On June 22, 1998 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained a back injury as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. 97-2(6).
2. Plaintiff is entitled to compensation for temporary total disability at the rate of $282.41 per week from August 18, 1998 through the date of hearing before the Deputy Commissioner on August 10, 1999 and continuing thereafter for as long as he remains so disabled. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, including the treatment by Dr. Reeg and the recommended surgery. N.C. Gen. Stat.97-2(19); 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $282.41 per week from August 18, 1998 through the date of hearing before the Deputy Commissioner on August 10, 1999 and continuing thereafter for as long as he remains so disabled. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorneys fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including those arising from the treatment by Dr. Reeg and the additional surgery he has recommended.
3. An attorneys fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiffs counsel. Defendants shall pay 25% of the lump sum ordered paid in Paragraph 1 of this Award shall be paid directly to plaintiffs counsel. Thereafter, defendants shall pay every fourth check directly to plaintiffs counsel.
4. Defendants shall pay the costs.
This 16th day of August 2000.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/________________ RENÉE C. RIGGSBEE COMMISSIONER